UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NEW 75TH & COTTAGE CURRENCY EXCHANGE, INC., | ) ) ) | |
| Plaintiff, | ) ) | No. 17 C 6653 |
| v. | ) ) ) | Judge Edmond E. Chang |
| UNITED STATES POSTAL SERVICE, | ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

The New 75th & Cottage Currency Exchange sued the Postal Service in Illinois state court, alleging that the Postal Service improperly dishonored a check that it had issued. The Currency Exchange seeks relief under three Illinois statutes. As a federal agency, the Postal Service removed the case to federal court and then moved to dismiss the case. R. 1; R. 12, Mot. Dismiss.[1] That motion is granted: the Currency Exchange did not properly serve the Postal Service and failed to exhaust its administrative remedies. (And, in two instances, the complaint fails to state a claim.) The case is dismissed.

---

[1]Citations to the record are noted as "R." followed by the docket number and the page or paragraph number.

# I. Background

In November 2016, the Postal Service issued a check for $448.66 to Bianca Williams. R. 26, Compl. ¶ 4.[2] Williams sold the check to the Currency Exchange for cash. *Id.* ¶ 6. The Currency Exchange later tried to present the check for payment, but it was dishonored with the phrase "Stop Payment" included as the reason for return. *Id.* ¶ 7, Exh. A. The Currency Exchange was charged a $25 fee for the return of the check. *Id.* ¶ 7.

In January 2017, the Currency Exchange sent a letter to a Chicago post office, seeking to collect on the amount of the check. R. 18, Pl.'s Resp. Br. Exh. A. The letter threatened to pursue claims against the Postal Service if it did not reimburse the Currency Exchange for the value of the check, the check-return fee, attorneys' fees, and court costs. *Id.* There is no indication that the Postal Service ever responded to that letter. So, in March 2017, the Currency Exchange sent a similar letter, this time to the Postal Service's Tort Claims Office in Chicago. *Id.* The Postal Service acknowledged receipt of this second letter and requested further documentation. *Id.* Exh. B. But before receiving a final decision from the Postal Service (known as a final "disposition" in the pertinent statute, 28 U.S.C. § 2675(a)), the Currency Exchange filed suit in May 2017. Compl. at 1. The Postal Service eventually denied the Currency Exchange's claim. Pl.'s Resp. Br. Exh. C.

---

[2]The original version of the state-court complaint filed along with the notice of removal had an obstruction that obscured two paragraphs of the complaint. *See* R. 1 ¶¶ 8-9. The Postal Service later filed an unobstructed version of the complaint at R. 26.

In the now-removed complaint, the Currency Exchange asserts that it is entitled to relief under three Illinois statutes. Compl. ¶¶ 9-10. The Currency Exchange's attempts to serve the Postal Service with this complaint and summons were plagued with difficulties. The Currency Exchange first attempted to serve the Postal Service at its Chicago Tort Claims Office, believing that the Postal Service would be amenable to service at that address based on their past interactions. Pl.'s Resp. Br. at 2-3. But when the Currency Exchange's process server attempted service at the Chicago Tort Claims Office, a Postal Service employee told the process server that "service of process must be sent to "E[a]gan, MN." *Id.*[3] The Currency Exchange took the employee's word for it and directed service to the Postal Service accounting center in Eagan, Minnesota. *See* R. 13, Def.'s Br. at 4; Pl.'s Resp. Br. at 2-3. The Currency Exchange did not make any other attempts at service.

## II. Legal Standard

The Postal Service has moved to dismiss under Federal Rules of Civil Procedure 12(b)(5), 12(b)(1), and 12(b)(6). Rule 12(b)(5) allows "[a] defendant … [to] enforce the service of process requirements through a pretrial motion to dismiss." *Cardenas v. City of Chicago*, 646 F.3d 1001, 1005 (7th Cir. 2011). The plaintiff bears the burden of showing that service was proper, *id.*, and the "court may consider affidavits and other documentary evidence" outside the pleadings. *Paulsen v. Abbott Labs.*, 2018 WL 1508532, at *5 (N.D. Ill. Mar. 27, 2018); *see also Durukan Amer.,*

---

[3]The only evidence that this happened is the Currency Exchange's assertion in its response brief and the attached process server affidavit. *See* Pl. Resp. Br. Exh. E. But, as will become clear, service was improper even assuming that the assertion is true.

3

*LLC v. Rain Trading, Inc.* 787 F.3d 1161, 1164 (7th Cir. 2015) (considering affidavits and employment records in concluding that there was a dispute of fact over service of process). If service is found to be insufficient, then the next question is whether to extend the time to serve or, instead, to dismiss the case for lack of service. That decision is a highly discretionary one. *Cardenas*, 646 F.3d at 1005.

"Federal Rule of Civil Procedure 12(b)(1) allows a party to move to dismiss a claim for lack of subject matter jurisdiction." *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). In considering a motion to dismiss for lack of subject matter jurisdiction, the Court "must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff." *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999). When a key fact is disputed, the Court can also look beyond the allegations contained in the pleadings to determine whether jurisdiction is proper. *Id.*

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan*, 570 F.3d at 820. Generally, the complaint only needs "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). But claims alleging fraud must also satisfy the heightened standard of Rule 9(b), meaning they "state *with particularity* the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b) (emphasis added). On a Rule 12(b)(6) motion, the Court considers whether the complaint contains sufficient "factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

4

(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (cleaned up).[4] Mere legal conclusions are not entitled to the presumption of truth. *Id.* at 678-79. The complaint's allegations "must … raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

### III. Analysis

### A. Service of Process

The Postal Service first argues that the Currency Exchange did not effectuate proper service. Even though the Currency Exchange initially filed in Illinois court, federal law governs service of process on the United States Postal Service. 39 U.S.C. § 409(b). As a result, the Currency Exchange had to follow Federal Rule of Civil Procedure 4(i)'s requirements for serving the United States government and its agencies. Rule 4(i) requires that the plaintiff either "deliver a copy of the summons and of the complaint to the United States attorney for the district where the action is brought" or mail the summons and complaint to the civil-process clerk at the United States Attorney's Office. Fed. R. Civ. P. 4(i)(1)(A). The plaintiff must also send a copy of the summons and complaint to the United States Attorney General. Fed. R. Civ. P. 4(i)(1)(B). But the Currency Exchange followed neither of these instructions. Instead, it attempted to serve the Postal Service in Eagan, Minnesota, based solely on the word of an unidentified Postal Service employee. The Currency

---

[4]This opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See, e.g., United States v. Reyes*, 866 F.3d 316, 321 (5th Cir. 2017).

5

Exchange did not follow Rule 4(i)'s procedural requirements, meaning it failed to properly serve the Postal Service.[5]

Although the Currency Exchange is now outside of the 90-day window for accomplishing service, the Court would have to give an extension of time if the Currency Exchange showed good cause for the delay. Fed. R. Civ. P. 4(m); *Coleman v. Milwaukee Bd. of Sch. Directors*, 290 F.3d 932, 933-34 (7th Cir. 2002). Good cause generally does not include "half-hearted" attempts to serve the defendant, *Geiger v. Allen,* 850 F.2d 330, 333 (7th Cir. 1988), nor anything less than "reasonable diligence," *Schmude v. Sheahan*, 214 F.R.D. 487, 490 (N.D. Ill. 2003) (citing *Bachenski v. Malnati*, 11 F.3d 1371, 1377 (7th Cir. 1993)). Here, the Currency Exchange failed to follow the simple requirements of Rule 4(i). Attorney inadvertence is not an acceptable excuse without substantial extenuating factors, *Floyd v. United States*, 900 F.2d 1045, 1047 (7th Cir. 1990), and the Currency Exchange does not present any compelling reason for its mistake. The mere word of an unknown Postal Service employee claiming that service should be sent to Minnesota is insufficient justification for overlooking Rule 4(i). The Currency

---

[5]The Currency Exchange might also have failed to properly serve process by not serving the Postal Service's general counsel. 39 C.F.R. § 2.2 ("The General Counsel of the Postal Service shall act as agent for the receipt of legal process against the Postal Service."); *Vill. of Wheeling v. Fragassi*, 2010 WL 3087462, at *2 (N.D. Ill. Aug. 2, 2010); *Douglass v. United States Postal Service*, 2017 WL 2225187, at *1 (N.D. Ind. May 22, 2017). It is not clear, however, that 39 C.F.R. § 2.2 designates the Postal Service's general counsel as the *exclusive* agent for the receipt of process. In any case, the Currency Exchange did not even come close to effecting proper service under Rule 4(i), so it is unnecessary to decide whether it was also required to serve the Postal Service's general counsel.

6

Exchange has not come close to demonstrating reasonable diligence, so there is no good cause that would require an extension.

It is true that, even absent good cause, the Court can still grant a permissive extension of time to remedy service. Fed. R. Civ. P. 4(m); *Coleman*, 290 F.3d at 934. Here, the Court can consider factors like "a statute of limitations bar, prejudice to the defendant, actual notice of a lawsuit, and eventual service," or take a more holistic approach. *Troxell v. Fedders of N. Am., Inc.*, 160 F.3d 381, 383 (7th Cir. 1998). At the end of the day, the Currency Exchange's failure does not warrant an extension because its error resulted from a simple, avoidable oversight. As far as the record shows, the Currency Exchange did not make even the most basic attempt to investigate how to properly serve the Postal Service—which was right there in Rule 4(i)—and now tries to excuse its neglect by pointing the finger at an unknown Postal Service employee. What's more, even if extra time were granted, the Currency Exchange would still have failed to exhaust its administrative remedies, as discussed below. For these reasons, the Court declines to provide more time and grants the Postal Service's Rule 12(b)(5) motion to dismiss.

### B. Subject Matter Jurisdiction and Exhaustion

The Postal Service next argues that the Court does not have subject matter jurisdiction over the Currency Exchange's claims. In general, although the Postal Service broadly waives its immunity in 39 U.S.C. § 401(1), any tort claims against

the Postal Service are governed by the Federal Tort Claims Act (FTCA).[6] 39 U.S.C. § 409(c); *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 484 (2006). The FTCA requires the prospective plaintiff to exhaust administrative remedies for his or her claims before filing suit. 28 U.S.C. § 2675(a).[7] The administrative process begins when the claimant presents the claim to the proper agency. *Id*. The claimant must then allow the agency six months to resolve the claim—the claimant can file suit only after those six months have passed or after receiving the agency's final disposition. *Id*. Failure to exhaust administrative remedies is grounds for dismissal, but administrative exhaustion "is better characterized as a condition precedent to the plaintiff's ability to prevail" rather than a matter of subject matter jurisdiction. *Smoke Shop, LLC v. United States*, 761 F.3d 779, 786-87 (7th Cir. 2014) (cleaned up).

---

[6]The Currency Exchange does not make the argument that some of its Illinois statutory claims are not tort claims, and the Postal Service does not address that issue either. Indeed, the Currency Exchange *agrees* that the United States should have been named as the defendant for all its claims in accordance with FTCA standards, apparently conceding that all its claims fall under the FTCA. Pl.'s Resp. Br. at 5-6; 28 U.S.C. § 2679(a). Because the Currency Exchange concedes that the FTCA applies to all its claims, it offers no argument that some of its claims might not be subject to the FTCA's exhaustion requirement. *Cf. Speedy Check Cashers, Inc. v. United States Postal Service*, 286 F.Supp.3d 934, 935-36 (N.D. Ill. 2017). The Court will not make that argument on the Currency Exchange's behalf. *See, e.g., Harvey v. Town of Merrillville*, 649 F.3d 526, 532 (7th Cir. 2011) (noting that perfunctory and underdeveloped arguments are waived); *United States v. Olmeda-Garcia*, 613 F.3d 721, 723 (7th Cir. 2010) (same)

[7]The FTCA also mandates that all claims name the United States as the defendant. 28 U.S.C. § 2679(a); *Hughes v. United States*, 701 F.2d 56, 58 (7th Cir. 1982) ("Under the Federal Tort Claims Act, a governmental agency cannot be sued in its own name; the action must be brought against the United States."). The Currency Exchange has asked permission to amend the complaint to name the proper defendant, Pl.'s Resp. Br. at 5-6, but doing so would not fix the lack of administrative exhaustion, as discussed below. So the Court denies the request to amend. *See, e.g., Heng v. Heavner, Beyers & Mihlar LLC*, 849 F.3d 348, 354-55 (7th Cir. 2017) (affirming refusal to permit amendment because an amendment would be "futile").

Here, the Currency Exchange filed its lawsuit *before* receiving the Postal Service's final denial of the claim. The Currency Exchange sent its claim to the Postal Service in early March 2017.[8] Once the Postal Service received the claim, it had six months to make a final disposition. 28 U.S.C. § 2675(a); 39 C.F.R. § 912.5. In other words, the Postal Service had to decide whether to grant the Currency Exchange's request by early September 2017, and, indeed, it reached a timely conclusion in August. But the Currency Exchange had already jumped the gun by filing its lawsuit in May 2017—at least three months before it was entitled to do so. The Currency Exchange thus did not properly exhaust its administrative remedies, and is now barred from pursuing this lawsuit. *McNeil v. United States*, 508 U.S. 106, 111 (1993) (holding a plaintiff fails to meet the administrative exhaustion requirement when he or she commences an action before the claim is "finally denied," even if the plaintiff completes the administrative process after filing suit). So, in addition to the lack of proper service, the Postal Service's motion to dismiss would have to be granted for failure to exhaust.[9]

---

[8]It is possible that the letter sent by the Currency Exchange in January 2017 could qualify as presentation of the claim to the Postal Service, although the Currency Exchange does not explicitly make that argument. *See* 39 C.F.R. § 912.4 ("[C]laims … may be filed at any office of the Postal Service."). But even under this more generous timeline, the Currency Exchange still filed prematurely.

[9]Because the Currency Exchange failed to exhaust administrative remedies, the Court need not address whether the Illinois Deceptive Practices Act claim falls within the FTCA's intentional tort exception for "misrepresentation, [or] deceit." *See* 28 U.S.C. § 2680(h); *Omegbu v. United States*, 475 F. App'x 628, 629 (7th Cir. 2012) (non-precedential disposition) (holding that an FTCA claim involving fraud fails on the merits because of 28 U.S.C. § 2680(h)).

## C. Failure to State a Claim

Finally, the Postal Service argues that two of the Currency Exchange's claims are not adequately stated. Fed. R. Civ. P. 12(b)(6). The Court only considers this argument for the sake of completeness, as the problems with service of process and administrative exhaustion are independent grounds to dismiss the case. First, the Postal Service asserts that the Currency Exchange does not sufficiently state a claim under the Illinois Deceptive Practices Act (IDPA), 720 ILCS § 5/17-1. To state a claim under the IDPA, the Currency Exchange must allege that the Postal Service "(1) delivered a check to obtain personal property; (2) knew at the time that the funds in the account were insufficient to pay the check; (3) acted with the intent to defraud; and (4) failed to pay on demand." *Banc Corp USA v. Perez*, 2006 WL 1594100, at *7 (N.D. Ill. June 5, 2006). Because the IDPA claim sounds in fraud, the Currency Exchange must meet the heightened pleading standards of Rule 9(b). *Id.* In other words, the complaint must allege "the who, what, when, where, and how" of the alleged fraud. *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (cleaned up).

Yet the Currency Exchange does not provide any specific *facts* to allege the circumstances of its claim. Instead, it only says the Postal Service "took an affirmative action to ensure that the Check would be dishonored upon presentment." Compl. ¶ 8. This conclusory statement alone does not nearly reach the higher standards of stating a claim for fraud. Nowhere does the Currency Exchange specify who undertook this "affirmative action" or when they did so, how

the "affirmative action" was related to the dishonored check, or even what the "affirmative action" was. So the complaint fails to state a claim under the IDPA.

The Postal Service also argues that the Currency Exchange fails to state a claim under the Illinois bad-check statute, 810 ILCS § 5/3-806. This statute allows a plaintiff to be repaid either $25 or the amount of any costs and expenses incurred in connection with seeking reimbursement for the check—whichever amount is more—as well as any interest on the check. 810 ILCS § 5/3-806. The statute only imposes liability in three specific instances: when a check was dishonored "[(1)] because the drawer does not have an account with the drawee, or [(2)] because the drawer does not have sufficient funds in his account, or [(3)] because the drawer does not have sufficient credit with the drawee." 810 ILCS § 5/3-806. Importantly, "Stop Payment"—the scenario at hand here—is not listed as a situation in which the issuer may be liable. *Francis v. Snyder*, 389 F. Supp. 2d 1034, 1041 (N.D. Ill. 2005); *Ozkaya v. Telecheck Servs., Inc.*, 982 F. Supp. 578, 586 (N.D. Ill. 1997). The Currency Exchange has not stated a claim under the Illinois bad-check statute.[10]

### IV. Conclusion

The Postal Service's motion to dismiss is granted. The Currency Exchange did not properly serve the Postal Service, and there is not a compelling reason to grant it more time. Also, by filing the lawsuit too early, the Currency Exchange

---

[10]Although the Currency Exchange seems to think that the Postal Service is also challenging its holder-in-due-course claim under 810 ILCS § 5/3-301 *et seq.*, *see* Pl.'s Resp. Br. at 7-8, the Postal Service concedes that this claim is not dismissible on a Rule 12(b)(6) motion. R. 20, Def.'s Reply Br. at 5 n.2.

11

failed to properly exhaust its administrative remedies under the FTCA. Final judgment will be entered and the status hearing of June 21, 2018 is vacated.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: June 20, 2018